*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CORY LEE SOUDERS,

Defendant-Appellant.

UNPUBLISHED
May 27, 2025
11:55 AM

No. 364982
Kent Circuit Court
LC No. 08-006820-FC

Before: LETICA, P.J., and BOONSTRA and MARIANI, JJ.

PER CURIAM.

In 2008, defendant sexually assaulted his former girlfriend. In 2009, he pleaded no contest to one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (the actor causes personal injury to the victim and force or coercion is used to accomplish the sexual penetration), and was sentenced to 17½ to 50 years' imprisonment.[1] Defendant's CSC-I conviction classified him as a Tier III offender under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, requiring him to register as a sex offender for life, MCL 28.722(a)(*iii*)(B) and MCL 28.725(13).

In November 2022, defendant, *in propria persona*, moved for immediate removal from the sex offender registry, relying on *People v Betts*, 507 Mich 527; 968 NW2d 497 (2021). In *Betts*, our Supreme Court held "that the 2011 SORA, when applied to registrants whose criminal acts

---

[1] This Court denied defendant's application for leave to appeal from his plea. *People v Souders*, unpublished order of the Court of Appeals, entered July 23, 2009 (Docket No. 292629), lv den 485 Mich 978 (2009). Thereafter, this Court denied defendant's application for leave to appeal from a post-judgment order vacating an amended judgment of sentence. *People v Souders*, unpublished order of the Court of Appeals, entered March 25, 2015 (Docket No. 324817). Subsequently, our Supreme Court vacated the trial court's October 20, 2014 order revoking the amended judgment of sentence, remanded to the trial court to reinstate the September 15, 2014 amended judgment of sentence, but otherwise denied leave to appeal. *People v Souders*, 501 Mich 918 (2017).

predated the enactment of the 2011 SORA amendments, violate[d] the constitutional prohibition on ex post facto laws." *Id*. at 574. The trial court denied defendant's motion, concluding:

> *Betts* did not find that SORA as a whole was unconstitutional; it found that certain provisions applied retroactively were unconstitutional. As such, Defendant [] is still required to register for SORA, and removing him from the registry would be inappropriate.

Defendant now appeals by delayed leave granted,[2] arguing that he is entitled to immediate removal from the sex offender registry because it is an unconstitutional ex post facto punishment to require him to register under the 2021 SORA.[3] We affirm.

In 1994, the Michigan Legislature enacted SORA. See 1994 PA 295. "The first version of SORA created a confidential database accessible only to law enforcement" that required those "convicted of certain sex offenses to register and notify law enforcement of address changes." *Betts*, 507 Mich at 533, citing MCL 28.725(1), as enacted. The Legislature later amended SORA, making it accessible to the public, requiring registrants to report additional personal information, and establishing "exclusion zones" for registrants. *Betts*, 507 Mich at 534-535. In 2011, the Legislature enacted "significant structural amendments" that "categorized registrants into three tiers on the basis of their offenses and based the length of registration on that tier designation." *Id*. at 535, citing MCL 28.722(k) and MCL 28.722(s) through (u), as amended by 2011 PA 17.

In *Betts*, the prosecution criminally "charged [the] defendant with violating SORA's registration requirements[.]" *Betts*, 507 Mich at 537. The defendant thereafter moved to dismiss the criminal "charge, arguing that the retroactive application of the 2011 SORA requirements violated the constitutional prohibitions on ex post facto laws." *Id*.

In July 2021, the Michigan Supreme Court held that the retroactive application of the 2011 SORA violated "state and federal constitutional prohibitions on ex post facto laws." *Betts*, 507

---

[2] *People v Souders*, unpublished order of the Court of Appeals, entered June 21, 2023 (Docket No. 364982). This Court limited defendant's appeal to the issues raised in his delayed application and supporting brief. *Id*. And this Court granted defendant's request for the appointment of counsel, remanding to the trial court to appoint appellate counsel to represent defendant in this appeal. *Id*.

[3] In his delayed application for leave to appeal, defendant framed the issue as being: "Does requiring [him] to register as a sex offender pursuant to MCL 28.723 et seq. (SORA) violate the prohibition of ex post facto laws?" In addition to relying on *Betts*, as he did before the circuit court, defendant also cited to *People v Lymon*, 342 Mich App 46; 993 NW2d 24 (2022) (*Lymon I*), aff'd in part; vacated in part ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164685, rel'd July 29, 2024) (*Lymon II*). And, defendant argued that both *Betts*, as to the 2011 version of SORA, and *Lymon I*, as to the 2021 version of SORA, determined that applying SORA, a criminal punishment, retroactively violated the federal and state constitutional prohibitions again ex post facto laws. US Const, art 1, § 10, cl 1 ("No State shall . . . pass any . . . ex post facto Law . . . ."); Const 1963, art 1, § 10 ("No . . . ex post facto law . . . shall be enacted.").

Mich at 533. An ex post facto law is one that "(1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) *increases the punishment for a crime*; or (4) allows the prosecution to convict on less evidence." *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014) (emphasis added). Both the United States and Michigan Constitutions prohibit the enactment of ex post facto laws. See US Const, art I, § 10, cl 1; Const 1963, art 1, § 10.

In *Betts*, our Supreme Court engaged in a "two-step inquiry":

First, th[e] Court must determine whether the Legislature intended the statute as a criminal punishment or a civil remedy. If the statute imposes a disability for the purpose of reprimanding the wrongdoer, the Legislature likely intended the statute to be a criminal punishment. However, if the statute imposes a disability to further a legitimate public purpose, the Legislature likely intended the statute to be a civil or regulatory remedy.

If the Legislature intended to impose criminal punishment, the retroactive application of such a statute violates the ex post facto prohibitions, and the inquiry ends. However, if the Legislature intended to impose a civil or regulatory remedy, this Court must then consider whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. [*Betts*, 507 Mich at 542-543 (quotation marks and citations omitted).]

The Court also stated that "the Legislature's manifest intent will be rejected only when a party challenging the statute provides *the clearest proof* that the statutory scheme is so punitive either in purpose or effect to negate the State's intention to deem it civil." *Id*. at 543-544 (quotation marks and citation omitted).

As to the first factor, the Court determined that "the Legislature likely intended SORA as a civil regulation rather than a criminal punishment," *id*. at 549, because "the Legislature's intent in enacting SORA was the promotion of public safety, a nonpunitive goal," *id*. at 548.

As to the second factor, the Court explained that in determining whether the defendant had satisfied the burden of providing "the clearest proof of the statutory scheme's punitive character in order to [successfully] negate the State's intention to deem it civil," it did "not examine individual provisions of SORA in isolation but instead assess[ed] SORA's punitive effect in light of all the act's provisions when viewed as a whole." *Id*. at 549 (quotation marks and citation omitted). The Court then considered each of the following factors from the United States Supreme Court's decision in *Kennedy v Mendoza-Martinez*, 372 US 144; 83 S Ct 554; 9 L Ed 2d 644 (1963): (1) "whether SORA has been regarded in our history and traditions as a form of criminal punishment," *Betts*, 507 Mich at 550 (quotation marks and citation omitted); (2) "how the effects of the 2011 SORA are felt by those subject to it," *id*. at 554 (quotation marks and citation omitted); (3) "whether the 2011 SORA promotes the traditional aims of punishment: retribution and specific and general deterrence," *id*. at 556; (4) "whether the 2011 SORA has a rational connection to a nonpunitive purpose," *id*. at 558; and (5) "whether the regulatory means chosen are reasonable in light of the nonpunitive objective," *id*. at 559 (quotation marks and citation omitted).

Following its analysis of each factor, the Court concluded that the 2011 SORA: (1) "[bore] significant resemblance to the traditional punishments of banishment, shaming, and parole because of its limitations on residency and employment, publication of information and encouragement of social ostracism, and imposition of significant state supervision," *id*. at 553; (2) "imposed onerous restrictions on registrants by restricting their residency and employment, and . . . also imposed significant affirmative obligations by requiring extensive in-person reporting," *id*. at 556; and (3) promoted "the traditional aims of punishment" because it "aimed to protect the public through deterrence" and imposed retributive restrictions, *id*. at 558. The Court also concluded that, although the 2011 SORA sought "to further the nonpunitive purpose of public safety," *id*., it imposed excessive restraints, and the regulatory means chosen were unreasonable to further the nonpunitive objective, *id*. at 561-562. The Court ultimately held that "the 2011 SORA, when applied to registrants whose criminal acts predated the enactment of the 2011 SORA amendments, violate[d] the constitutional prohibition on ex post facto laws." *Id*. at 574.

The Court then addressed the issue of remedy. *Id*. at 562. It first considered the remedy of severability, recognizing that there was a legislative preference for severability, as expressed in MCL 8.5. *Betts*, 507 Mich at 562. However, the Court rejected the argument that its severance of provisions from the 2011 SORA would be consistent with the Legislature's intent and explained that engaging in the severance process would constitute an unwise invasion into the legislative domain. *Id*. at 566. The Court then considered whether a prior version of SORA could be applied through revival. *Id*. at 571. Ultimately, the Court rejected the revival remedy due to "the same concerns of legislative infringement and practical complications discussed in conjunction with [the remedy of] severability . . . ." *Id*. at 572-573. Because the Court determined that neither severability nor revival were appropriate tools to remedy the constitutional violation, the Court was "constrained to hold that the 2011 SORA may not be retroactively applied to registrants whose criminal acts subjecting them to registration occurred before the enactment of the 2011 SORA amendments." *Id*. at 573-574.

After oral argument on the *Betts* defendant's application for leave to appeal, but before the Court issued its opinion, "the Legislature enacted a series of amendments of SORA, effective March 24, 2021." *Id*. at 538, citing 2020 PA 295. The *Betts* Court "declined to consider . . . whether the retroactive application of any post-2011 SORA amendments violate[d] constitutional ex post facto provisions." *Betts*, 507 Mich at 574 n 30.

In *Lymon I*, 342 Mich App at 69, this Court addressed the issue whether registration under the 2021 SORA constituted a "criminal punishment." Applying the same multi-factor analysis used by our Supreme Court in *Betts*, this Court concluded that it did. *Id*. at 69-81.

First, following *Betts*, this Court determined " 'that the Legislature likely intended SORA as civil regulation [to promote public safety] rather than a criminal punishment.' " *Lymon I*, 342 Mich App at 70, quoting *Betts*, 507 Mich at 548-549. Second, as the Supreme Court did in *Betts*, this Court considered the *Mendoza-Martinez* factors, concluding that the 2021 SORA: (1) "continues to bear a significant resemblance to the traditional punishments of shaming and parole," *Lymon I*, 342 Mich App at 75; (2) "imposes significant affirmative obligations on registrants by mandating upon pain of imprisonment that they report common life changes within a short period of time, sometimes in person and sometimes in a manner not specified in the statute,"

-4-

*id*. at 77; and (3) "promotes the traditional aims of punishment" because it aims "to protect the public through deterrence and because its restrictions support the aim of retribution . . . ." *id*. at 78.

This Court also concluded that the 2021 SORA "furthers the nonpunitive purpose of public safety," *id*. at 79, but continues to impose "excessive" restraints, "even though there were fewer restraints in the 2021 SORA than in the 2011 SORA," *id*. at 80. This Court ultimately held that "the 2021 SORA's aggregate punitive effect negates the Legislature's intention to deem it a civil regulation. As a result, requiring an individual to comply with the 2021 SORA imposes a criminal punishment on a registrant." *Id*. at 81.

The *Lymon I* parties appealed and our Supreme Court denied the defendant's application, but granted the prosecution's cross application for leave to appeal. *People v Lymon*, ___ Mich ___; 983 NW2d 82 (2023). More specifically, our Supreme Court scheduled oral argument, limiting the issue under review to whether "requiring a defendant to register as a sex offender" under the 2021 SORA "for a non-sexual crime, such as unlawful imprisonment of a minor, constitute[d] cruel or unusual punishment" under the federal or state Constitutions. *Id*. The parties in this case agreed that our decision should be rendered after the Supreme Court resolved that issue.

Thereafter, our Supreme Court held that "application of SORA to non-sexual offenders like [the] defendant [in *Lymon I*, who was convicted of unlawful imprisonment of a minor,] [was] cruel or unusual punishment in violation of the Michigan Constitution." *People v Lymon*, ___ Mich ___, ___; ___ NW3d ___ (Docket No. 164865, rel'd July 29, 2024); slip op at 1-2, 38 (*Lymon II*). Although affirming this Court's ultimate judgment in *Lymon I*, our Supreme Court vacated this Court's opinion to the extent it was inconsistent with *Lymon II*'s reasoning. *Id*. at 2, 38. The Court concluded:

> [The *Lymon I* defendant] has consistently argued that the 2021 SORA constitute[d] cruel or unusual punishment as applied to [the] defendant himself or as applied more generally to non-sexual offenders. Accordingly, our analysis and decision concerns only whether the application of the 2021 SORA to non-sexual offenders like [the] defendant constitute[d] cruel or unusual punishment. We leave for another day and case whether the 2021 SORA constitutes punishment—and, more specifically, cruel or unusual punishment—when applied to other offenders. To the extent that the Court of Appeals decision in [*Lymon I*] determined that the 2021 SORA constitutes punishment as to all defendants, we vacate that conclusion. [*Lymon II*, ___ Mich at ___; slip op at 8, n 6].

After *Lymon II* was decided, this Court granted defendant's motion to allow the filing of a supplemental brief. *People v Souders*, unpublished order of the Court of Appeals, entered August 14, 2024 (Docket No. 364982). Each party filed a supplemental brief.

Subsequently, this Court held that a convicted sex offender, who filed a successive motion for relief from judgment, failed to establish that retroactive application of the 2021 amendments to SORA violates federal and state constitutional protections against ex post facto laws. *People v Kiczenski*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 364957), lv pending. Because this Court determined that the 2021 SORA did "not constitute punishment as applied to CSC-I

offenders," there was no ex post facto violation. *Id*. at ___; slip op at 13. This Court reasoned that the 2021 SORA had a rational connection to the Legislature's nonpunitive purposes of "preventing future criminal sexual acts and ensuring public safety from particularly dangerous individuals." *Id*. at ___; slip op at 8. Therefore, this factor "weigh[ed] strongly against the 2021 SORA being considered punishment for sexual offenders." *Id*. at ___; slip op at 9. This Court further explained that the 2021 SORA requirements were not excessive compared to their purpose. *Id*. at ___; slip op at 10-13. In making this determination, this Court recognized that a federal district court had reached the opposite conclusion in *Does v Whitmer*, 751 F Supp3d 761 (ED Mich, 2024), but this Court determined that that the federal court had not given appropriate weight to the rational-connection factor and erred in concluding that the 2021 SORA remained excessive. *Kiczenski*, ___ Mich App at ___; slip op at 12-13.

We are bound to follow *Kiczenski*. MCR 7.215(J)(1). Although the trial court's stated reasons for denying defendant's motion were erroneous, we affirm as it reached the correct result under *Kiczenski*. *People v Hawkins*, 340 Mich App 155, 195; 985 NW2d 853 (2022).

Affirmed.

/s/ Anica Letica
/s/ Mark T. Boonstra
/s/ Philip P. Mariani